UNITED STATES *v.* THE FRANK SYLVIA.

*(District Court, N. D. California.* December 24, 1888.)

1. SHIPPING—CARRIAGE OF PASSENGERS ON FREIGHT-BOAT.
   A libel against a vessel for a violation of law alleged to have been committed in using or navigating a freight-boat for the carrying of passengers without having been inspected as a passenger steamer, and obtaining a certificate specifying the number of passengers she can carry with prudence and safety, is not properly brought under Rev. St. U. S. § 4465, which forbids the taking on board of any steamer a greater number of passengers than is "stated in the certificate of inspection."

2. SAME.
   Nor under section 4466, which provides for special permits to be issued to "passenger steamers" engaged in excursions, allowing them to take on board an additional number of passengers over and above the number specified in the certificate.

3. SAME.
   But is properly brought under section 4499, which subjects to a penalty all steamers "navigated without complying with the terms of this title."

In Admiralty. On exceptions to libel filed against the steamer Frank Sylvia, a freight-boat, for carrying passengers contrary to law.

*John T. Carey,* U. S. Dist. Atty.
*Milton Andros,* for defendant.

HOFFMAN, J.    The steamer libeled in this case was provided with a certificate of inspection duly issued according to law.    By the certificate she was permitted to navigate, as a freight steamer, the bay of San Francisco or its tributaries, for the period of one year; but she was not allowed to carry passengers.    The libel alleges, in substance, that on November 6, 1887, she took on board and carried four passengers, she being then employed as a freight steamer on a voyage from San Francisco.    There are great, and in my judgment insuperable, difficulties in bringing this offense within the provisions of either section 4465 or section 4466.    The first of these sections forbids the taking on board of any steamer a greater number of passengers than is allowed by the certificate of inspection. Section 4466 provides for special permits to be issued to passenger steamers engaged in excursions, allowing them to take on board an additional number of passengers over and above the number specified in the certificate.    No penalty is denounced for carrying passengers on excursions in excess of the number allowed by the certificate and the special permit. For carrying passengers in excess of the number allowed by the certificate, the master and owner are, by section 4465, made liable to any person suing for the same, to forfeit the amount of the passage money and $10 for each passenger beyond the number allowed.    In the case at bar the certificate licensed the vessel as a freight steamer, and no passengers were allowed to be carried.    The libel is founded on section 4499.    This section imposes on the master and owners a penalty of $500 for navigating a "steamer" without complying "with the terms of this title."    It is argued that the master and owner should have been sued under the provisions of section 4465.    But the steamers referred to in this and nearly every other section of chapter 2, tit. 52, Rev. St., are steamers "carrying passengers," or "passenger steamers."    They seem to be treated as a class distinct from freight steamers, tugs, towing-boats, and yachts.    The certificate issued to a vessel of the former class of steamers, other than a ferry-boat, is required to specify the number of passengers she can prudently and safely carry; and for taking on board a greater number of passengers than is stated in the certificate the penalties imposed by section 4465 are incurred.    But the certificates of inspection granted to a freight-boat, tug-boat, etc., do not specify any number of passengers they may lawfully carry.    The violation of law alleged to have been committed in this case consists in using or navigating a freight-boat for the carrying of passengers, which had not been inspected as a passenger steamer, or obtained a certificate specifying the number of passengers she can carry with prudence and safety.    The offense denounced in section 4465 is the taking on board of such steamer passengers in excess of the number "stated in the certificate of inspection."    It is plain that she has not committed this offense.    If the penalty imposed by section 4465 for a violation of its provisions had been imprisonment of the master, would it be contended that an indictment against him for taking on board pas-

sengers in excess of the number stated in his certificate could be sustained upon proof that he had no certificate authorizing him to carry any passengers whatever, and that he therefore could not have carried passengers in excess of any number "stated" in the certificate of inspection? If the language of the section had been, "a greater number of passengers than allowed by law," it might with more plausibility have been applied to the facts alleged in this case. But the language is "a greater number of passengers than is stated in the certificate of inspection." It seems clear, therefore, that some number must be so stated before the number actually carried can be deemed to be in excess of it. My opinion, therefore, is that the libel is properly brought under section 4499, which subjects to a penalty of $500 all steamers "navigated without complying with the terms of this title, for which sum the vessel navigated shall be liable, and may be seized and proceeded against in any district court of the United States having jurisdiction of the offense." A direct and primary liability of the vessel for the penalty imposed is thus created, and the seizure and proceeding *in rem* are expressly authorized by the statute.

I do not feel called upon, nor hardly at liberty, to consider the very important question raised at the bar as to the constitutional right of congress to require the inspection of steamers, or in any way regulate the use of vessels employed on the navigable waters of the United States, but not engaged in foreign or interstate commerce. The validity of the laws regulating the use, equipment, and navigation of vessels used on the navigable waters of the United States, as well as those engaged in foreign or interstate commerce, has long and almost universally been acquiesced in. They are in their object and effect salutary, and, in some particulars, indispensable, to the safety of the foreign and interstate commerce, which congress has the unquestioned right to regulate, and the effect of a decision adverse to their validity would be so momentous and far-reaching, that I consider it to be my duty, as district judge of the United States, to assume their constitutionality, and to leave the question of their validity, in whole or in part, under the constitution, to be passed upon by a higher tribunal.